## STATE v. J. T. EDENS.

### *Juror—Nuisance—City Ordinance.*

1. One is not disqualified under section 229*g* of the Code to act as a grand juror in the criminal court of New Hanover county, by reason of his having a civil suit pending in another court of the county; and it was not error to refuse to quash an indictment found by the grand jury of which he was a member.

2. The defendant was charged in a common law indictment with a nuisance by obstructing a street, in that, he kept a market cart standing in the street for an hour and a half, and the jury rendered a special verdict finding that he was notified to remove the same but refused; that he and numbers of other persons were accustomed to occupy places on the street with their carts, selling vegetables, &c., but that it was contrary to the municipal regulations, and that notwithstanding the alleged obstruction, there was the usual passing of vehicles and foot-passengers: *Held* not to be a nuisance *per se*.

3. *Held further*, that where one is indicted for violating a city ordinance, the terms of the ordinance and the particular breach alleged, should be set forth.

INDICTMENT for a nuisance tried at August Term, 1881, of NEW HANOVER Criminal Court, before *Meares, J.*

The indictment charges the defendant with having committed a nuisance by obstructing a public street of the city of Wilmington. The particular nuisance complained of is that he kept a market cart standing in the street for the space of one and a half hours.

The prosecution originated in the criminal court of New Hanover county, and when called to answer, the defendant first pleaded in abatement that one of the grand jurors who passed upon the indictment had a civil suit pending and at issue in the superior court of said county, and was therefore disqualified.

His Honor overruled the plea and the defendant excepted.

The jury rendered a special verdict, upon which they asked the instruction of the court, in substance as follows: The defendant kept his mule and cart, on the day mentioned in the bill of indictment, in said position continuously for one and a half hours, (the position being found to be at the corner of Market and Second streets, near a crossing, as represented on a diagram accompanying the case) after being notified to remove the same, which he declined to do; that within the two years next preceding the finding of the indictment, the defendant put his cart and mule at different places on Market street, backing up his cart to the sidewalk, for the purpose of selling vegetables and other farm products, at least twenty-five times during the period aforesaid, and remained so situated from one to two hours each time; that other persons were in the habit of occupying similar positions on said streets with their carts and mules, to sell vegetables, &c., under the directions of the municipal authorities, as this defendant did; that it was contrary to the municipal regulations to occupy as aforesaid the position as shown on the diagram during said period; while the defendant was occupying said position, there was no other cart standing in the open space between the four corners of

the streets, and during the time there was the usual passing of vehicles and foot-passengers every way, up and down the street; the city ordinance prohibiting persons from placing carts at the corner indicated on the diagram (where the defendant's mule and cart were standing) was passed because of the public inconvenience in causing the collection of a crowd at the point adjacent to the sidewalk, which was usually so great as to require a policeman to keep the way clear, but on the particular occasion mentioned in the indictment, there was no such crowd; and that there were numbers of persons occupying similar positions on the street, with their carts backed up to the sidewalk, selling vegetables, &c.

Thereupon the court being of opinion that the defendant was guilty, gave judgment accordingly, and the defendant appealed.

*Attorney General*, for the State.
*Mr. D. J. Devane*, for defendant.

RUFFIN, J. First, as to the question touching the qualification of the grand juror who aided in finding the indictment. The act of 1876-'7, ch. 242, is the one which established the criminal court for the county of New Hanover, and after prescribing a manner of drawing the jurors for that court, differing somewhat with the mode ordinarily used in drawing those who are to serve in the superior courts, it provides in the 8th section that the jurors so drawn shall "be subject to the same rules and regulations and possess the same qualifications as are provided by law in regard to jurors in the superior court."

On looking at the statute (C. C. P., § 229a,) which is the only one that prescribes the qualifications of jurors for the superior court, we find that they are required to be such as have paid their taxes for the year preceding that in which

they may be drawn, and as are of sufficient intelligence and good moral character.

It is true that by section 229*g.* of the same Code, it is provided that if any juror drawn from the superior court should at the time have a suit pending therein, the scroll containing his name shall be returned to the box and he shall not be permitted then to serve. But this is no disqualification of the person as a juror for that court; so far from it his name is expressly directed to be returned to the box that he may be drawn on some other occasion after the determination of his pending action.

This is simply a precaution (an important one it is true) of the law growing out of its great regard for seemliness and perfect fair play, and whenever the reason ceases the rule itself ceases.

In view of the spirit of this statute, and as coming within the *rules and regulations* prescribed for jurors of the superior court, we should have no doubt that a person against whom there may be a prosecution pending in the criminal court would be temporarily disabled, though otherwise qualified, from serving as a juror in that court, but certainly this cannot be the consequence of his having an action at issue in another court. In fixing the qualifications for jurors in the criminal court, and declaring them to be the same with jurors of the superior court, the law had in view the general qualifications of such jurors, and not a particular disqualification growing out of the accidental pendency of an action in that court. The defendant's plea in abatement was therefore properly overruled.

The next enquiry is whether the judgment rendered by the court is justified by the special findings of the jury. In this connection it must be borne in mind that the indictment, though concluding against the statute, is in fact but at common law. It alleges no violation of any city ordinance, or breach of any police regulation. The charge is

simply that of a common law nuisance, alleged to have been committed by the obstruction of a public highway.

We cannot therefore in anywise. refer to the copy of the city ordinances filed in the case, and to which our attention was called in the argument, especially as they make no part of the case certified to this court.

The statute makes the violation of an ordinance of the city a misdemeanor punishable by indictment, and if the defendant in this case has been guilty of that offence, he may and should be prosecuted therefor. But in that case the indictment should truly set forth the terms of the ordinance and the particular breach alleged, in order that the defendant might know certainly to what he is called to answer. According to the only view of the case which we feel at liberty to take, the conduct of the defendant on the occasion referred to in the verdict, cannot be aggravated by the fact as found by the jury, that it was contrary to the municipal regulation, since the verdict does not disclose what the regulation was, or the authority by which it was ordained, and these are matters of which we cannot take judicial notice as matters of law.

Strip the case then of all that is said about the city regulation and the causes which led to its adoption, and what does the conduct of the defendant, as found by the jury, amount to? Nothing more than that on a day certain he stood with his cart and mule near the angle made by two streets, one of which was ninety-nine, and the other sixty-six feet wide, for the space of one hour and a half, during all of which time "there was the usual passing of vehicles and foot-passengers every way up and down the streets."

We cannot think that conduct such as this is deemed by the law to amount to a nuisance *per se.*

Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or building thereon is *of itself* a nuisance, though it should not operate

as an actual obstacle to travel, or work a positive inconveni-
ence to any one.  It is an encroachment upon a public right,
and as such is not permitted by the law to be done with im-
punity.   But the very object of a highway is that it may be
used, and though travel be its primary use, it still may be
put to other reasonable uses ; and whether a particular use
of it which does not of itself amount to a nuisance is reas-
onable or not, is a question of fact to be judged of by the
jury according to the circumstances of the case.

Unlike the case of a permanent obstruction just referred
to, it is not the manner of using the highway which con-
stitutes the nuisance, but the inconvenience to the public
which proceeds from it, and unless such inconvenience
really be its consequence, there is no offence committed.

We have made careful reference to the leading English
cases on this subject (which are admitted by all the authors
to be *Rex* v. *Russell,* 6 East, 427 ; *Rex* v. *Jones,* 3 Camp., 230,
and *Rex* v. *Cross, Ib.,* 224) and in each and every one of
them, the use of the highway which was the subject of
prosecution was shown to be not such as *might,* but such as
actually did obstruct travel therein, and impair its enjoy-
ment by the public.   And so it is in every case decided by
the courts of the several states, which have come under our
observation, and it must needs be so, since the question as
to which is a proper and reasonable use of a highway must
depend in a great measure upon its locality, its accustomed
usage, and the exigencies of the public, it being apparent
that what would obstruct travel and work an inconvenience
to the public in the crowded streets of London, or on Broad-
way in New York, might be harmless in the streets of a less
populous place.

Understanding the verdict of the jury to be, that the de-
fendant by occupying with his mule and cart the position
he did, and for the space of time he did, interposed no obstacle
to travel and caused no actual inconvenience to the public,

we are of the opinion that it was error in the court below to give judgment against him in the premises.

Let this be certified to the criminal court of New Hanover county, to the end that the defendant may be discharged.

Error.                                   Reversed.