C. A. HARDY, ADMINISTRATOR OF PAUL G. HARDY, DECEASED, v.
DR. OLIVER DAHL.

(Filed 14 October, 1936.)

**1. Physicians and Surgeons C b—Practitioner of particular school of healing must possess and use skill ordinarily possessed by like practitioners.**

A person holding himself out as a practitioner of a particular school of healing of human diseases is required to possess and apply with reasonable care and diligence in the exercise of his best judgment that degree of knowledge and skill ordinarily possessed by other practitioners of the same method or system of practice, and is liable for damages resulting from his failure to possess or exercise such skill, but he is not required to possess the highest technical skill nor the knowledge and learning of the well recognized schools of medicine and surgery, the practitioner having been selected to administer, with the requisite degree of skill and care, the particular system advocated by his school of practice.

**2. Evidence K c—Trial court's decision that witness is not an expert is reviewable when based upon conclusion of law.**

Ordinarily, the competency of a witness as an expert is addressed to the discretion of the trial court and is not reviewable, but when the court's decision is based upon a conclusion of law from the facts elicited upon preliminary examination, the decision is reviewable.

**3. Same—Evidence held to show that witnesses were experts upon matters in question and their testimony should have been admitted.**

This action involved the question of negligence on 'the part of a practitioner of naturopathy in the administration of his system of healing. Defendant offered two witnesses who testified on preliminary examination that they had diplomas from a recognized school of naturopathy, had been duly licensed by the states in which they practiced, and had practiced naturopathy twenty-four and eighteen years, respectively. The trial court held as a matter of law that the witnesses were not experts. *Held:* The witnesses were experts upon the question of the proper treatment of a patient under this system of practice, and the holding of the court as a matter of law that they were not experts and the exclusion of their testimony upon proper hypothetical questions is subject to review and *is held* for error.

**4. Physicians and Surgeons C b—Fact that practitioner had not obtained required license held irrelevant to issue of practitioner's negligence.**

Defendant is a practitioner of naturopathy, and this action was instituted to recover damages alleged to have resulted from his negligence in the practice of his system of healing. Defendant had not obtained a license to practice as required by C. S., 6704. *Held:* Defendant's practice of his system of healing without the required license subjects him to indictment, but is irrelevant to the issue of negligence involved in the civil action, and it is error to admit evidence and submit issues in the civil action relating to defendant's failure to obtain the license and his practice of his profession illegally.

**5. Appeal and Error J g—**

Where a new trial is awarded on certain exceptions, other exceptions relating to matters which may not arise on the subsequent hearing, need not be considered.

APPEAL by defendant from *Phillips, J.,* at May-June Term, 1936, of HENDERSON. New trial.

Action for damages for wrongful death alleged to have been caused by negligence and want of skill on the part of the defendant in the treatment of a disease with which plaintiff's intestate was suffering, resulting in the death of said intestate.

It was alleged that the defendant held himself out as a doctor of naturopathy, as one possessing the requisite skill and learning to diagnose and treat diseases by natural methods without the administration of drugs or surgery; that without having been licensed or qualified under the statute as a non-drug-giving practitioner and without possessing the requisite knowledge, learning, and skill in the subjects of anatomy, physiology, and diagnosis, undertook to treat plaintiff's infant son, the intestate, with the result that the child died as a result of the negligence and want of skill of the defendant; that the child had diphtheria, which the defendant negligently and unskillfully diagnosed and improperly treated as tonsilitis, permitting the child to have only fruit juices for

the space of two weeks and failing to give proper care and attention until the child was almost *in extremis,* when regular medical practitioners were called in, diphtheritic antitoxin administered, but too late to save the child's life.

Defendant denied the allegations of negligence and want of skill in the treatment of plaintiff's intestate, and alleged that the treatment given was in accord with the teachings and methods of naturopathy, which he held himself out as and was qualified to practice, and denied that the death of the child was due to any act or neglect on his part.

In apt time the defendant requested the court to charge the jury as follows: "The court charges you further that the fact that the defendant did not procure a license to practice naturopathy in this State cannot be considered by you as evidence of negligent treatment of plaintiff's intestate. The fact that he has no license to practice this profession could not be a proximate cause of the injury complained of. The plaintiff must satisfy you by the greater weight of the evidence of the negligent or unskillful treatment on the part of the defendant, and his failure to procure a license is no evidence of either."

The following issues were submitted to the jury:

"1. Did the defendant, unlawfully, hold himself out to the public as being one qualified to diagnose, operate, prescribe for, and treat diseases, pain, injury, deformity, or physical conditions of the human body, as alleged in the complaint?

"2. Did the defendant unlawfully diagnose, prescribe for, and treat plaintiff's intestate, as alleged in the complaint?

"3. Was the death of plaintiff's intestate caused by the negligence and unskillful treatment of the defendant, as alleged in the complaint?

"4. What amount of damages, if any, is plaintiff entitled to recover of the defendant?"

Upon each of the first two issues the court charged the jury to answer "Yes," if they found the facts to be as the evidence tended to show.

The jury for their verdict answered the first, second, and third issues "Yes," and fixed the damages under the fourth issue at $1,400.00.

From judgment on the verdict the defendant appealed.

*O. B. Crowell and R. L. Whitmire for plaintiff, appellee.*
*Redden & Redden and J. E. Shipman for defendant, appellant.*

DEVIN, J. The defendant held himself out as a non-drug-giving practitioner of that system or school for the healing of human diseases known as naturopathy. By virtue of section 6704 of the Consolidated Statutes the statutory provisions for the examination of applicants and the issuance of certificates for the practice of osteopathy were made to

apply "to all other non-drug-giving practitioners except chiropractors (as to whom special statutes are applicable), by whatever name they are known or call themselves, or of whatever school they claim to be graduates or hold diplomas, and to anyone who holds himself out as being able to diagnose, treat, operate, or prescribe for any human diseases, . . . and who shall offer or undertake by any means or method to diagnose, treat, operate, or prescribe therefor without the use of drugs. . . . Provided, however, that all such persons so applying to said board for examination shall be examined only on the subjects of anatomy, physiology, pathology, and diagnosis."

It appeared in evidence that the defendant had graduated from and held a diploma from the American School of Naturopathy, had practiced in New York and in Florida, and had, upon examination in the latter state, been granted a certificate to practice there, but had not stood the examination or received the certificate required by C. S., 6704, in North Carolina.

It further appeared that the plaintiff, the father and administrator of the estate of the intestate, was himself "a believer in the profession of naturopathy the same as Dr. Dahl"; that he knew the defendant well and had previously employed him to treat other members of his family on several occasions; that plaintiff's brother was a practitioner of naturopathy; that plaintiff did not believe in the treatment prescribed by physicians for diphtheria in the administration of antitoxin "unless absolutely necessary."

But plaintiff's adherence to the same school of thought as the defendant would not prevent his recovering damages for the death of his intestate if he can show that the death of the child proximately resulted from the negligent and unskillful treatment of the defendant according to the method he held himself out to know and practice. "In calling a physician, a person is presumed to elect that the treatment shall be according to the system or school of medicine to which such physician belongs." *Van Sickle v. DooLittle,* 184 Iowa, 885. "When a doctor accepts professional employment he is only required to exercise such reasonable care and skill as is usually exercised by doctors in good standing of the same school of practice." *Nelson v. Dahl,* 174 Minn., 574.

In determining liability in a civil action for damages on the ground of negligence, the defendant was not required to possess the highest technical skill nor the wide scientific knowledge and learning of the well recognized schools of medicine and surgery, nor to exercise the utmost degree of care, but only to exercise that degree of care, knowledge, and skill ordinarily possessed by members of his school of practice, and to use reasonable care and diligence in the exercise of that skill and knowl-

edge and in the exercise of his judgment in the treatment he holds himself out to practice. 48 C. J., 1118; 21 R. C. L., 386.

Though the defendant held himself out, and the plaintiff, on behalf of his infant son, consulted him as a practitioner of naturopathy and not as a regular physician, the defendant claimed to possess the skill requisite for diagnosis and treatment of disease, and in the performance of what he undertook to do he must be held to the degree of skill and care which he claimed to possess.

One who undertakes to treat the sick and holds himself out as competent to administer a certain kind or character of treatment, undertakes to bring to his employment in each case a fair, reasonable, and competent degree of skill and reasonable care and diligence in the use of his skill and in the application of his knowledge, and that he will exert his best judgment and give reasonable attention to the progress of the treatment he prescribes, and is answerable in damages for injuries proximately resulting from want of that degree or knowledge and skill ordinarily possessed by those of his system or method of practice, or from failure to exercise due care and diligence or to use his best judgment in the treatment of the case. He is not required to use all known and reasonable means, or possess extraordinary learning or skill. *Nash v. Royster,* 189 N. C., 408. When the defendant held himself out to the plaintiff and the public as a doctor of naturopathy, the law imposed upon him, with respect to his employment, the duty of possessing and exercising that reasonable degree of diligence, learning, and skill ordinarily possessed by similar practitioners. 21 R. C. L., 386.

The defendant offered two witnesses, Dr. Carl Frischkorn and Dr. J. H. Lauber, as expert witnesses for the purpose of showing in response to proper hypothetical questions the opinions of these witnesses that the treatment of plaintiff's intestate, as testified by defendant, was in keeping with the practice of naturopathy generally, and conformed to the teachings and practices of naturopathy in diseases of this kind. Upon objection by plaintiff, this evidence was excluded, the court holding "as a matter of law that the witness was not an expert witness."

The qualifications of the witness Frischkorn were as follows: "I live in Norfolk, Virginia, have lived there since 1906. I am a naturopath physician, have practiced naturopathy since 1912, and have had a license to practice naturopathy under the laws of Virginia since 1922. I hold a diploma from the American School of Naturopathy, which is a recognized school of naturopathy. I took the course prescribed by that school, which is the same school that Dr. Dahl attended, and am now in the practice of that profession."

The witness Lauber testified he was a graduate of the American School of Naturopathy, had practiced naturopathy continuously since 1918, and was residing in and licensed by the State of Florida.

An expert has been defined as "one who is skilled in any particular art, trade, or profession, being possessed of peculiar knowledge concerning the same"; "one who must have made the subject upon which he gives his opinion a matter of particular study, practice, or observation." The term implies both knowledge from study and practical experience in the art or profession. Roger's on Expert Testimony; Greenleaf Ev., sec. 440; Wigmore, sec. 555; Black's Law Dictionary; *Pridgen v. Gibson,* 194 N. C., 289. "The test is to inquire whether the witness' knowledge of the matter in relation to which his opinion is asked is such, or so great, that it will aid the trier in his search." *State v. Killeen,* 79 N. H., 201; *Macon Ry. & Light Co. v. Mason,* 123 Ga., 773; Wigmore on Ev., sec. 1923. "The common law does not require that the expert witness shall be a person duly licensed to practice medicine." Wigmore on Ev., sec. 569; *Swanson v. Hood,* 99 Wash., 506; *People v. Rice,* 54 N. E., 48 (N. Y.).

While the competency of a witness to testify as an expert is a question primarily addressed to the discretion of the court, and his decision is ordinarily conclusive (*Flynt v. Bodenhamer,* 80 N. C., 205; *S. v. Cole,* 94 N. C., 958; *S. v. Wilcox,* 132 N. C., 1120), this rule is subject to the qualification that, when the preliminary question of the competency of the witness is made to turn upon a matter of law, it is subject to review. The judge's findings of fact, if supported by evidence, are usually final, but his conclusions thereon constitute legal inferences which are reviewable. *Pridgen v. Gibson, supra; Liles v. Pickett Mills,* 197 N. C., 772.

This evidence was competent. Its value, credibility, and weight were matters for the jury. *Voight v. Indus. Com.,* 297 Ill., 109.

The fact that the defendant was engaged in treating patients without having obtained license so to do, in violation of C. S., 6708, was not evidence of negligence in the treatment of plaintiff's intestate, and the instructions presenting this view, which were prayed for by the defendant, should have been given. The question was not whether he was licensed or not, but whether he exercised proper care in the treatment of the patient. As was said in *Brown v. Shyne,* 242 N. Y., 176, 44 A. L. R., 1407: "Unless the plaintiff's injury was caused by carelessness or lack of skill, the defendant's failure to obtain a license was not connected with the injury." *Bute v. Potts,* 76 Cal., 304; *Janssen v. Mulder,* 232 Mich., 183.

If the defendant has been engaged in treating diseases in violation of the statute, he is liable to indictment, and, upon conviction, to suffer the prescribed penalty, but in a civil action, bottomed upon the law of

negligence, the failure to possess a State certificate is immaterial on the question of due care.

The defendant further excepted to the submission of the first and second issues and to the peremptory instruction of the court below thereon, in favor of the plaintiff. It would seem that the third issue would have determined the controversy, and was comprehensive enough to permit either party to present his case fully.

The defendant's motion for judgment of nonsuit was properly denied.

For the reasons herein pointed out, the defendant is entitled to a new trial. There were other exceptions noted, but it is unnecessary to discuss them, as the questions thereby presented may not arise in another trial.

New trial.