STATE OF NORTH CAROLINA v. W. N. C. PALLET AND FOREST PRODUCTS COMPANY, INC.

No. 34

(Filed 31 August 1973)

1. Indictment and Warrant § 9— requisites for valid indictment or warrant

No indictment or warrant, whether at common law or under a statute, can be good if it does not accurately and clearly allege all of the constituent elements of the crime sought to be charged and also charge the offense with sufficient certainty to apprise the defendant of the specific accusation against him so as to enable him to prepare his defense and to protect himself from a subsequent prosecution for the same offense, and to enable the court to proceed to judgment.

State v. Pallet

2. **Indictment and Warrant § 9; Nuisance § 3— air pollution — insufficiency of warrant to charge crime**

A warrant charging defendant with a violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency was insufficient to show that the alleged conduct of defendant was a criminal offense where the warrant did not inform defendant or the court as to when, by whom and under what circumstances the alleged Agency was created or where records disclosing those facts could be found, nor did it allege the contents of Regulation 2 or refer to where the text of the regulation could be found.

3. **Criminal Law § 31— municipal ordinances — no judicial notice**

The courts will take judicial notice of municipalities, counties and other political subdivisions of the State, but they will not take judicial notice of municipal ordinances.

4. **Indictment and Warrant § 9— violation of municipal ordinance — sufficiency of allegation**

A criminal prosecution for violation of a municipal ordinance cannot be maintained if the warrant on which it is based does not set out the ordinance or plead it in a manner permitted by G.S. 160A-79(a).

5. **Criminal Law §§ 31, 146— raising of constitutional question — determination of case on other grounds**

Where the Court could not take judicial notice that a Regional Air Pollution Board known as the Western North Carolina Regional Air Pollution Agency had been created by two or more municipalities or counties by joint resolution or contract nor could it take judicial notice of any rules and regulations of such board, the record did not afford a proper basis for passing upon whether the rules and regulations adopted by such board had constitutional validity; moreover, the case could be decided on other grounds without considering constitutional questions raised in the briefs.

6. **Indictment and Warrant § 9— violation of rule of government board or commission — inclusion of rule in indictment**

In a criminal prosecution for violation of a rule or regulation of a governmental board or commission, the indictment should set forth such rule or regulation or refer specifically to a permanent public record where it is recorded and available for inspection, since no criminal prosecution should be based on a rule or regulation evidenced only by a typed paper in a file or notebook of such board or commission.

Justice LAKE concurs in result.

APPEAL by the State under G.S. 15-179(3) and (6) from *Thornburg, J.,* at 30 October 1972 Session of BUNCOMBE Superior Court, certified for initial appellate review by the Supreme Court pursuant to G.S. 7A-31.

In this criminal action entitled, *"The State of North Carolina v. W. N. C. Pallet & Forest Products Co., Inc.,"* defendant

State v. Pallet

was arrested on a warrant which charged that on or about the 22nd day of May, 1972, in the County of Buncombe, he "did unlawfully, wilfully, and feloniously cause, suffer, allow and permit emission from an installation, to wit, a tee-pee type sawdust, bark, and wood chip burner, which were [sic] of a shade or density darker than that designated as No. 2 on the Ringelmann Chart for an aggregate of more than 5 minutes in any one hour or more than 20 minutes in any 24-hour period, to wit, for a period of 40 minutes between the hours of 1:20 o'clock p.m. and 2:00 o'clock p.m. on said 22nd day of May, 1972, and did cause, suffer, allow and permit emission from an installation, to wit, a tee-pee type sawdust, bark, and wood chip burner, of such opacity as to obscure an observer's view of a degree greater than does smoke of a shade or density darker than that designated as No. 2 on the Ringelmann Chart, to wit, smoke of a shade or density designated as No. 5 on the Ringelmann Chart and 100% opacity, against the peace and dignity of the State and in violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency and North Carolina General Statute Section 143-215.3(a) (11) (e) (3)."

On arraignment in the District Court, defendant, in writing, moved to quash the warrant "for that it appears on the face of the warrant that there is no charge of any criminal offense or violation of any valid law. . . ." Defendant asserted "that the alleged 'Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency' (if any such 'agency' exists) is unlawful and invalid, and such alleged 'Regulation' and N. C. General Statutes 143-215.3(a) (11) (e) (3)" are unconstitutional and void, being in violation of Article II, Section 1, and Article I, Section 6, and Article I, Section 1, of the Constitution of North Carolina.

The District Court judge quashed the warrant and dismissed the action "for the reason that Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency is in violation of and contrary to Article II, Section 1, of the Constitution of North Carolina in that it was passed and adopted pursuant to an unlawful delegation of legislative power and said Regulation is unconstitutional and void."

On the State's appeal, Judge Thornburg affirmed the order of the District Court. The State excepted to Judge Thornburg's ruling and appealed.

*Attorney General Robert Morgan and Assistant Attorney General Henry T. Rosser for the State.*

*Herbert L. Hyde for defendant appellee.*

BOBBITT, Chief Justice.

[1] "No indictment, whether at common law or under a statute, can be good if it does not accurately and clearly allege all of the constituent elements of the crime sought to be charged. It must charge the offense with sufficient certainty to apprise the defendant of the specific accusation against him so as to enable him to prepare his defense and to protect him from a subsequent prosecution for the same. offense, and to enable the court to proceed to judgment.

"An indictment or warrant is sufficient if it charges the offense in a plain, intelligible, and explicit manner, and contains averments sufficient to enable the court to proceed to judgment, and to bar a subsequent prosecution for the same offense." 4 Strong, N. C. Index 2d, Indictment and Warrant § 9, pp. 347-48.

The warrant alleges that defendant's conduct as set forth therein is unlawful, wilful and felonious because in violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency and North Carolina General Statutes 143-215.3 (a) (11) e.3. The first question is whether the allegations of this warrant charge a criminal offense.

Prior to 1967, Article 21 of Chapter 143 of the General Statutes (Vol. 3C Replacement 1964), entitled, "State Stream Santitation and Conservation," created a "State Stream Resources Committee" to administer its provisions. Article 21 of Chapter 143 was rewritten by Chapter 892, Session Laws of 1967, which provided that it was to be known and cited as "The North Carolina Water and Air Resources Act." The provisions of Article 21 as rewritten by the 1967 Act were designated G.S. 143-211 through G.S. 143-215.9.

G.S. 143-211 states the public policy which underlies Article 21. G.S. 143-212 creates the Department of Water and Air

Resources. G.S. 143-213 defines certain of the terms used in Article 21. The North Carolina Board of Water and Air Resources (Board) was created by G.S. 143-214 and charged with the duty of administering the provisions of Article 21. Thereafter, the powers and duties of the Board were set forth in detail.

The 1969 and 1971 amendments to the 1967 Act are incorporated in Article 21 of Chapter 143 as set forth in the 1971 Supplement to Volume 3C Replacement 1964 of the General Statutes. Statutory provisions cited below are those set forth in the 1971 Supplement.

G.S. 143-215.3 (a) (11) e.1 is entitled "Local air pollution control programs authorized" and, in part, provides: "The governing body of any county, municipality, or group of counties and municipalities within a designated area of the State, as defined in this Article, subject to the approval of the Board of Water and Air Resources, is hereby authorized to establish, administer, and enforce a local air pollution control program for the county, municipality, or designated area of the State which includes but is not limited to:

"i. . . .

"ii. . . .

"iii. . . .

"iv. Adoption, after notice and public hearing, of air quality and emission control standards, or adoption by reference, without public hearing, of any applicable rules, regulations and standards duly adopted by the Board of Water and Air Resources; and administration of such rules, regulations and standards in accordance with provisions of this subdivision.

"v. . . .

"vi. . . ."

G.S. 143-215.3 (a) (11) e.2 provides: "Each governing body is authorized to adopt any ordinances, resolutions, rules or regulations which are necessary *to establish and maintain an air pollution control program and to prescribe and enforce air quality and emission control standards,* a copy of which must be filed with the State Board of Water and Air Resources and with the clerk of court of any county affected. . . ." (Our italics.)

G.S. 143-215.3 (a) (11) e.3 prescribes the penalty for violation "of any of the requirements contained in such ordinances, resolutions, rules or regulations. . . ."

G.S. 143-215.3 (a) (11) g, entitled, "Creation and administration of regional air pollution control programs," provides: "In addition to any other powers provided by law and subject to the provisions of this section, *each governing body of a county or municipality* is hereby authorized and empowered to establish *by contract, joint resolution, or other agreement with any other governing body of a county or municipality,* upon approval by the Board of Water and Air Resources, *an air pollution control region* containing any part or all of the geographical area within the jurisdiction of those boards or governing bodies which are parties to such agreement, provided the counties involved in the region are contiguous or lie in a continuous boundary and comprise the total area contained in any region designated by the Board of Water and Air Resources for an area-wide program. The participating parties are authorized *to appoint a regional air pollution control board* which shall consist of at least five members who shall serve for terms of six years and until their successors are appointed and qualified. Two members shall be appointed for two-year terms, two shall be appointed for four-year terms and the remaining member or members shall be appointed for six-year terms. A participant's representation on the board shall be in relation to its population to the total population of the region based on the latest official United States census with each participant in the region having at least one representative; provided, that where the region is comprised of less than five counties, each participant will be entitled to appoint members in relation to its population to that of the region so as to provide a board of at least five members. Where the term 'governing body' is used, it shall include the governing board of a region. The regional board is hereby authorized to exercise any and all of the powers provided in this section. The regional air pollution control board shall elect a chairman and shall meet at least quarterly or upon the call of the chairman or any two members of the board. In lieu of employing its own staff, the regional air pollution control board is authorized, through appropriate written agreement, to designate a local health department as its administrative agent." (Our italics.)

G.S. 143-215.3 (a) (11) g does not expressly confer authority upon Regional Air Pollution Control Boards to determine and

adopt air quality and emission control standards. The authority, if any, must be found in these sentences: "Where the term 'governing body' is used, it shall include the governing board of a region. The regional board is hereby authorized to exercise any and all of the powers provided in this section." Considered in the light most favorable to the State, the word *section* refers to all of G.S. 143-215.3(a)(11). A portion thereof, to wit, G.S. 143-215.3(a)(11)e.2 confers upon the governing body of a municipality or county authority "to establish and maintain an air pollution control program and to prescribe and enforce air quality and emission control standards. . . ."

Whether G.S. Chapter 143, Article 21 (Part 1), purports to delegate to The North Carolina Board of Water and Air Resources legislative authority which is vested exclusively in the General Assembly by Article II, Section 1, of the Constitution of North Carolina, is not presented. Defendant is not charged with the violation of any regulation adopted by that Board. We note that rules and regulations adopted by that Board shall "be printed (or otherwise duplicated), and a duly certified copy thereof shall immediately be filed with the Secretary of State." G.S. 143-215.4.

Whether G.S. Chapter 143, Article 21 (Part 1), purports to delegate to the governing board of a municipality or county legislative authority vested exclusively in the General Assembly by Article II, Section 1, of the Constitution of North Carolina, is not presented. Defendant is not charged with the violation of a regulation adopted by the governing body of any municipality or county.

The warrant charges the violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency. It is silent as to when, by whom and under what circumstances the alleged Western North Carolina Regional Air Pollution Agency was created.

G.S. 143-215.3(a)(11)g provides that a Regional Air Pollution Control Board may be established "by contract, joint resolution, or other agreement" between the governing boards of counties and municipalities in a designated area. The representation of each of the participating counties and cities on such Regional Air Pollution Control Board is prescribed. If it be assumed that a legal entity called the Western North Carolina Regional Air Pollution Agency was created pursuant to those

provisions, the warrant gives no information as to what counties or municipalities participated in its creation or the terms of the joint resolution or contract which created it. Nor does the warrant contain any reference to where such joint resolution or contract may be found.

Assuming the Western North Carolina Regional Air Pollution Agency was created as a regional air pollution control board pursuant to G.S. 143-215.3(a)(11)g by a joint resolution or contract of two or more municipalities or counties, the provisions of such joint resolution or contract are undisclosed.

The warrant charges a violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency. It does not allege verbatim or in substance the provisions of the alleged Regulation No. 2 nor does it allege when and under what circumstances the alleged Regulation No. 2 was adopted. Nor does it allege that a copy thereof has been filed with the State Board of Water and Air Resources and with the Clerk of Court of Buncombe County.

[2] We conclude that the allegations of the warrant are insufficient to show that "violation of Regulation No. 2 of Section II of Article IV of the Rules and Regulations of the Western North Carolina Regional Air Pollution Agency" constitutes a criminal offense.

[3] The courts will take judicial notice of municipalities, counties and other political subdivisions of the State. *State v. R. R.,* 141 N.C. 846, 850, 54 S.E. 294, 296 (1906); *Laundry v. Underwood,* 220 N.C. 152, 155, 16 S.E. 2d 703, 705 (1941); *Patterson v. Patterson,* 230 N.C. 481, 484-85, 53 S.E. 2d 658, 661 (1949).

"Judicial notice is not taken of municipal ordinances, and annoying difficulties of proof may be encountered unless the ordinance is printed or published under proper authority." 1 Stansbury's North Carolina Evidence (Brandis Rev. 1973) § 12, p. 29. *Accord, State v. Clyburn, et al,* 247 N.C. 455, 461, 101 S.E. 2d 295, 300 (1958); *Fulghum v. Selma,* 238 N.C. 100, 105, 76 S.E. 2d 368, 371 (1953); *Toler v. Savage,* 226 N.C. 208, 210, 37 S.E. 2d 485, 486 (1946).

[4] A criminal prosecution for violation of a municipal ordinance cannot be maintained if the warrant on which it is based does not set out the ordinance or plead it in a manner permitted by the statute now codified as G.S. 160A-79(a). *State v. Bur-*

*ton,* 243 N.C. 277, 90 S.E. 2d 390 (1955). Decisions prior to the enactment of the 1917 statute on which G.S. 160A-79 (a) is based include the following: *Greensboro v. Shields,* 78 N.C. 417 (1878) ; *Hendersonville v. McMinn,* 82 N.C. 532 (1880) ; *State v. Edens,* 85 N.C. 522, 526 (1881).

In *State v. Lunsford,* 150 N.C. 862, 64 S.E. 765 (1909), the warrant charged that defendant "did unlawfully and willfully sell spirituous, vinous and malt liquors to one Zeb. D. Grant, in violation of City Ordinance No. State [sic], contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State." The opinion of Justice (later Chief Justice) Hoke states the ground on which judgment was arrested: "[W]hile the warrant and accompanying affidavit give indication that the offense charged was for the violation of some municipal ordinance, the ordinance is not set forth or described, nor is it referred to in any way sufficient to identify it, and for this reason a prosecution can not be sustained under it as an offense against a municipal regulation." *Id.* at 865, 64 S.E. at 766.

[5] The Court cannot take judicial notice that a Regional Air Pollution Board known as the Western North Carolina Regional Air Pollution Agency *has been created* by two or more municipalities or counties by joint resolution or contract. *A fortiori,* the Court cannot take judicial notice of the contents of any rules and regulations which such a board may have adopted. Hence, the present record does not afford a proper basis for passing upon whether rules and regulations adopted by such a board have constitutional validity.

The warrant is deficient in that it does not inform the defendant or the court as to when, by whom and under what circumstances the alleged Western North Carolina Regional Air Pollution Agency was created; nor does it allege where records disclosing the pertinent facts may be found. Moreover, although it charges the violation of Regulation No. 2 it does not allege the contents thereof; nor does it refer to where the text of such regulation may be found. Assuming the validity of Regulation No. 2, the warrant falls far short of meeting the essentials of a valid criminal pleading.

The following from the opinion of Justice Johnson in *State v. Blackwell,* 246 N.C. 642, 644, 99 S.E. 2d 867, 868-69 (1957), is pertinent here: "The constitutionality of a statute will not be considered and determined by the Court as a hypothetical

question. *S. v. Muse,* 219 N.C. 226, 13 S.E. 2d 229. Nor will the Court anticipate a question of constitutional law before the necessity of deciding it arises. *S. v. Trantham,* 230 N.C. 641, 55 S.E. 2d 198. Moreover, a constitutional question will not be passed on even when properly presented if there is also present some other ground upon which the case may be decided. *S. v. Jones,* 242 N.C. 563, 89 S.E. 2d 129; *S. v. Lueders,* 214 N.C. 558, 200 S.E. 22."

We do not reach the constitutional questions discussed in the briefs but affirm the quashal of the warrant solely on the ground stated herein, namely, the failure of the warrant to allege facts sufficient to identify the crime for which the defendant was to be tried.

[6] The text of "Regulation No. 2" does not appear in the record before us. Nor does the record contain any stipulation which sets forth, verbatim or in substance, the provisions thereof. In a criminal prosecution for violation of a rule or regulation of a government board or commission, the indictment should set forth such rule or regulation or refer specifically to a permanent public record where it is recorded and available for inspection. No criminal prosecution should be based on a rule or regulation evidenced only by a typed paper in a file or notebook of such board or commission.

On the ground stated, the judgment of the court below is affirmed.

Affirmed.

Justice LAKE concurs in result.