STATE OF NORTH CAROLINA v. CURTIS EDWARD HUNTER

No. 79

(Filed 8 January 1980)

1. Searches and Seizures §§ 8, 34— search of car incident to arrest—seizure of pistol—seizure of items under plain view rule

In a prosecution for kidnapping and rape, the trial court did not err in allowing into evidence a pistol and other items seized from defendant's car without a warrant where the evidence tended to show that officers heard a radio broadcast concerning the crimes charged while they were patrolling; on the basis of the broadcast, they stopped defendant's car and had him get out;

---

State v. Hunter

defendant left his motor running, got out of the car, and stood just outside the car; one officer ran his hand under the front seat of the car and retrieved defendant's pistol; seizure of the pistol was proper as a search and seizure incident to a lawful arrest; and the other items taken from the car were lawfully seized under the plain view doctrine, since the officers observed them on the backseat and in the back floorboard of the car while the officers were outside the car, and there was probable cause to believe that the items were connected in some way with the crimes which the officers were then investigating.

**2. Rape § 4.2— forensic serologist—testimony as to possibility of intercourse admissible**

The trial court in a rape and kidnapping prosecution did not err in permitting a forensic serologist to give opinion testimony concerning the possibility of intercourse having taken place between defendant and the prosecutrix on the basis of scientific examination of their body fluids.

**3. Rape § 4.2; Criminal Law § 71— penetration of victim—expert medical evidence admissible—penetration by assailant—shorthand statement of fact**

The trial court in a rape prosecution did not err in receiving into evidence expert testimony that the prosecuting witness had been sexually penetrated a short time before a medical examination was conducted, and the witness's statement that the prosecutrix had been penetrated by an "assailant" was admissible as a shorthand statement of fact.

**4. Rape § 3— first degree rape—age of victim not alleged—sufficiency of indictment**

Though it is essential that the State prove that the age of a defendant in a prosecution for first degree rape is 16 or more, G.S. 14-21, an indictment which is drawn under the provisions of G.S. 15-144.1 which omits averments that defendant's age was greater than 16 is sufficient to charge him with the crime of first degree rape and to inform him of the accusation against him.

**5. Rape § 6.1— first degree rape charged—evidence that gun used—failure to submit lesser offenses proper**

The trial court in a first degree rape case did not err in failing to submit to the jury lesser included offenses of the crime charged since second degree rape differs from first degree rape in that defendant may be under 16 years of age and that a deadly weapon need not be used or serious bodily injury need not be inflicted, but there was no dispute in this case that defendant had a gun in his possession at or near the time he allegedly raped the prosecutrix.

**6. Kidnapping § 1—.age of victim—no essential element of offense**

There was no merit to defendant's contention that, in order to convict defendant of kidnapping, the jury must find that the victim was a person 16 years of age or older, since the victim's age is not an essential element of the crime of kidnapping.

**7. Kidnapping § 1— sufficiency of indictment**

An indictment which charged that defendant kidnapped a named person without her consent for the purpose of committing the felonies of· rape and

crime against nature, though it did not track the language of G.S. 14-39 completely, was constitutionally sufficient in that defendant was fairly apprised of the State's accusations against him.

APPEAL by defendant from *Braswell, J.,* 12 February 1979 Regular Schedule B Session of WAKE Superior Court.

By bills of indictment proper in form defendant was charged with (1) kidnapping and (2) raping Millicent Lorella Freeman. He pled not guilty and the state presented evidence summarized in pertinent part as follows:

On 27 October 1978 Ms. Freeman, age 25, was a junior at St. Augustine's College in Raleigh. At around 4:30 p.m. on that date, she had finished classes and was walking on Poole Road on the way to the home of her aunt. Before reaching her aunt's home, defendant (whom she did not know at the time) drove up in an automobile and stopped near Ms. Freeman. He asked her a question and, thinking that he was seeking directions, she stepped over to the passenger side of his automobile.

Defendant then produced a small pistol and ordered Ms. Freeman to get into his car. Complying with his order, she entered the car and defendant proceeded to drive on numerous streets in the eastern section of Raleigh. He suggested to Ms. Freeman that he was going to have sexual intercourse with her, and she pleaded with him not to harm her. In order to convince her that the pistol was real, he held it outside of the car and fired it.

Eventually defendant drove the car into a large parking lot at the corner of Glascock Street and King Charles Road. After talking with Ms. Freeman at that location for some period of time, defendant drove his automobile onto King Charles Road and stopped at a point adjacent to a wooded area. Upon orders from defendant, Ms. Freeman removed all of her clothing below her waist. Defendant then made her go with him into the wooded area. At that point he removed most of his clothing and proceeded to have sexual intercourse with Ms. Freeman. He also forced her to perform fellatio on him.

At all times while Ms. Freeman was with defendant he was either holding his pistol in his hand or had it close by. She

entered defendant's car, remained in it, left it at the wooded area and had sexual intercourse with him because she was afraid that he would shoot her if she did not follow his directions.

After leaving the wooded area, defendant carried Ms. Freeman to an intersection near the Wake Medical Center where he released her. She then went to her apartment, police were called, and she was taken to the hospital emergency room for examination. Medical evidence showed that Ms. Freeman had engaged in sexual intercourse shortly before her examination at the emergency room.

Defendant offered evidence, including his own testimony, which is briefly summarized as follows: On the day in question he was employed by the City of Raleigh as a garbage collector. As he started to work early that morning, he had a flat tire. He left the car at a service station to have the tire repaired and decided not to go to work. He spent most of the morning and part of the afternoon drinking intoxicants with one or more friends. After getting his car back about the middle of the afternoon, he proceeded to ride around. He had a pistol with him and laid it on the car seat beside him. While driving down Poole Road, he stopped for a traffic light at which time Ms. Freeman came up to his car and asked him if he was going to Worthdale. When he told her that he was, she got into the car. After they had gone about 200 yards, engaging in small talk, she asked him to take her to Wakefield Apartments. When he refused to grant her request, she got mad, gathered her "stuff" together and got out of the car. He did not see Ms. Freeman anymore and he did not have any sexual contact with her at any time.

Other pertinent evidence will be reviewed in the opinion.

The jury found defendant guilty of kidnapping and first-degree rape.[1] From judgments imposing two life sentences, he appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*James R. Fullwood for defendant-appellant.*

---

1. Defendant was also charged with and tried for crime against nature. The jury found him not guilty of that charge.

BRITT, Justice.

[1]   Defendant assigns as error the denial of his motion to suppress certain evidence obtained pursuant to a warrantless search of his automobile. There is no merit in this assignment.

Prior to trial defendant filed a motion asking that all evidence, including a pistol, hard hat, key chain, knife, coat and some gloves, seized by police from his automobile be suppressed because his automobile was searched and the property was seized without a search warrant, in violation of his constitutional rights.

The court conducted a *voir dire* hearing on the motion at which investigating and arresting officers testified. Their evidence tended to show that Ms. Freeman reported the alleged offenses early in the evening of the day in question; that Officer C. K. Womble of the Raleigh Police Department went immediately to her apartment; that she provided him with a vivid description of defendant and his automobile; that Officer Womble related the descriptions of defendant and his automobile to the police radio dispatcher who, in turn, broadcasted the descriptions and other pertinent information over the police radio; that Officers Weingarten and Holloway of the Raleigh Police Department were on patrol that evening and were riding together; that they heard the broadcast relating to the suspect, his automobile and the crimes he allegedly had committed; that they observed an automobile being operated on a public street by a male person, both meeting the descriptions relayed on the broadcast; that they stopped the automobile and required the occupant, defendant, to get out; that defendant left the motor of his car running and stood just outside of the car; that one of the officers ran his hand under the front seat of the car and retrieved a loaded, cocked pistol therefrom; that the other items listed in the motion were lying on the seat of the automobile; and that defendant was arrested and taken to jail.

Defendant offered no evidence at the *voir dire*. Since the evidence offered by the state was uncontradicted, the court made no findings of fact but made conclusions of law that the officers had probable cause to stop defendant's car and arrest him; that the search the officers conducted was incident to a lawful arrest and the seizure effected by the officers was valid; and that the seizure of the items which had been on the car seat was lawful

under the plain view, exigent circumstances and probable cause doctrines.

The conclusions of the trial court are fully supported by the evidence and the law. Police officers may arrest without a warrant any person who they have probable cause to believe has committed a felony. G.S. § 15A-401(b)(2)a; *see also, United States v. Watson*, 423 U.S. 411, 46 L.Ed. 2d 598, 96 S.Ct. 820 (1976). The officers in this case had probable cause to believe that defendant had committed the felonies of kidnapping and rape. When an arrest is made, it is reasonable for the arresting officer to search without a warrant the suspect and the area within his immediate control for weapons and evidentiary items which may be concealed or destroyed. *Chimel v. California*, 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034 (1969); *see generally* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.1 (1978). The seizure of the gun from under the front seat was effected by a search incident to a lawful arrest. At the time Officer Weingarten ran his hand underneath the car seat, defendant was standing close to the door jamb, with his hands placed on top of the car. It follows, therefore, that the area around the front seat of the car was within his immediate control, as he could have attempted to retrieve the pistol to resist arrest or effect his escape. *Cf., Chimel v. California, supra* ("There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence.") As to the other items, they were lawfully seized under the "plain view" doctrine. Objects which are in the plain view of a law enforcement officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971); *Harris v. United States*, 390 U.S. 234, 19 L.Ed. 2d 1067, 88 S.Ct. 992 (1968); *State v. Leggete*, 292 N.C. 44, 231 S.E. 2d 896 (1977); *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated*, 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 45 (1976). All of the other items which defendant sought to suppress were observed by the officers from outside the car on the backseat and in the back floorboard of the automobile. There was probable cause to believe that the items

were connected in some way with the crimes which the officers were then investigating.

[2]   Defendant assigns as error the admission of certain opinion testimony by T. E. Yeshion. This assignment has no merit.

When Mr. Yeshion was offered as a witness, he stated that he was employed by the North Carolina State Bureau of Investigation as a forensic serologist.[2]

At that point defendant stipulated "as to the qualifications" of the witness as a forensic serologist. The court then conducted a *voir dire* in the absence of the jury to pass upon defendant's pretrial motion to suppress Mr. Yeshion's testimony. Following the *voir dire*, the court overruled the motion to suppress.

The witness testified in the presence of the jury, among other things, that in his official capacity he received male and female "rape kits" relating to defendant and Ms. Freeman; that he also received blood samples from defendant and Ms. Freeman together with certain clothing belonging to her; that he performed certain scientific tests on the materials received; that the tests revealed that Ms. Freeman was a Group B secretor in which group approximately 80 percent of the population falls; that Group B individuals secrete their blood group types in their body fluids; that the Group B blood type can be detected in the vaginal secretions in a female "or in semen in a male as well as saliva and other bodily fluids"; that the tests revealed that defendant was a Group A non-secretor individual; and that approximately 20 percent of the population falls into the same category as defendant.

After giving certain other information, the witness was asked the following hypothetical question:

"Mr. Yeshion, if the jury could find beyond a reasonable doubt the following facts: first, that Millicent Freeman is a type B secretor; second that the defendant is a type A non-secretor; third, that the presence of spermatozoa was found by you on the vaginal slides, the vaginal swabs, the rectal swabs, and the panties; and fourth, that the B antigen was

---

2. The witness testified that a forensic serologist examines articles of evidence for the presence of blood or body fluids, "body fluids including the semen and spermatozoa, the male reproductive cells."

found by you on the vaginal slides, the vaginal swabs, the rectal swabs, and the panties; do you have an opinion satisfactory to yourself as to whether or not that result, or whether or not that finding as to the slides, the swabs and panties, could or might have resulted from sexual intercourse between type B secretor and a type A non-secretor?"

Over defendant's objection, the witness stated that he did have an opinion which is: "My opinion is that these reactions are consistent with group B secretors, vaginal secretions, from Millicent Freeman; and group A non-secretors semen from the defendant."

Expert opinion testimony is generally admissible when the proffered witness is better qualified than the jury to form and state an opinion on a particular set of facts in a case. *See* 1 Stansbury's North Carolina Evidence § 132 (Brandis Rev. 1973). "The test is to inquire whether the witness' knowledge of the matter in relation to which his opinion is asked is such, or so great, that it will aid the trier in his search. *Hardy v. Dahl,* 210 N.C. 530, 535, 187 S.E. 788 (1936).

We hold that the court did not err in permitting the witness to answer the hypothetical question posed. Defendant did not move to strike any part of the answer. Clearly, the witness was better qualified than the jury to state an opinion on the facts. That scientific testimony is being accepted as more reliable is indicated by the comparatively recent enactment of our statute authorizing breathalyzer tests to determine intoxication, G.S. § 20-16.3, and our recently enacted statute authorizing evidence of blood types to prove or disprove paternity. G.S. § 8-50.1.

[3] By his third assignment of error, defendant contends that the trial court erred in receiving into evidence expert testimony that the prosecuting witness had been sexually penetrated a short time before a medical examination was conducted. The assignment is without merit.

Dr. Charles Hagan, a physician in the Emergency Department at Wake Medical Center, testified on behalf of the state. Defendant stipulated as to the qualifications of Dr. Hagan. During his direct examination by the district attorney, Dr. Hagan testified that on 27 October 1978, he was on duty in the emergen-

cy room of Wake Medical Center; that he had a conversation with the prosecutrix at about 7:00 p.m. during which she told him that she had been raped at approximately 5:30 p.m.; that he conducted a pelvic examination of the prosecutrix which indicated that she had an abrasion on the posterior wall of her vagina; that it was his opinion that the abrasion had been made a short time prior to the examination; and that the prosecuting witness had been sexually penetrated by an "assailant" on the day of the examination. Defendant argues that to allow Dr. Hagan to testify in the manner summarized above was to allow him to testify regarding the very question which the jury was charged to answer, i.e. whether the prosecutrix had been raped. We disagree.

An essential element of the crime of first-degree rape is penetration. *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917 (1972); *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). A physician who is properly qualified as an expert may offer an opinion as to whether the victim in a rape prosecution had been penetrated and whether internal injuries had been caused thereby. *State v. Atkinson,* 278 N.C. 168, 179 S.E. 2d 410, *death sentence vacated,* 403 U.S. 948, 29 L.Ed. 2d 861, 91 S.Ct. 2292 (1971). Insofar as Dr. Hagan testified as to the fact of penetration and the consequential injuries suffered by the prosecutrix, the testimony was competent under the rule of *State v. Atkinson, supra. Compare, State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976). As to the characterization of an "assailant," that was admissible as a shorthand statement of fact. *See State v. Goss,* 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Craddock,* 272 N.C. 160, 158 S.E. 2d 25 (1967).

By his fourth assignment of error, defendant contends that the trial court erred in failing to grant defendant's motion to dismiss the charge of rape and in not allowing his motion in arrest of judgment in the rape case for that the indictment was fatally defective in its failure to allege the age of defendant. This assignment is without merit.

[4] Though it is essential that the state prove that the age of a defendant in a prosecution for first-degree rape is sixteen or more, G.S. § 14-21, an indictment which is drawn under the provisions of G.S. § 15-144.1 which omits averments that defendant's age was greater than sixteen, as was done in this case, is sufficient to charge him with the crime of first-degree rape and inform

him of the accusation against him. G.S. § 15-144.1; *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978).

[5]  By his sixth assignment of error, defendant argues that the trial court committed prejudicial error in granting the motion of the state that no lesser included offenses of the crime of first-degree rape be submitted to the jury, in failing to submit an alternative verdict of second-degree rape to the jury, and by failing to grant defendant's motion for appropriate relief as a consequence of its failure to submit the alternative verdict. These arguments are without merit.

Where the victim is at least twelve years old, the elements of first-degree rape are: (1) carnal knowledge of a female, (2) by force, (3) against the will of the victim, (4) the defendant being more than sixteen years old, and (5) the victim's resistance having been overcome or her submission having been procured by the use of a deadly weapon or by the infliction of serious bodily injury. G.S. § 14-21; *State v. Goss, supra; State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977). The crime of second-degree rape differs from first-degree rape in that the defendant need not be more than sixteen years of age and the force used against the victim need not be that of a deadly weapon or the infliction of serious bodily injury. G.S. § 14-21; *see also*, Institute of Government, North Carolina Crimes: A Guidebook for Law Enforcement Officers (1978). It is clear that when a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense which is charged in the bill of indictment contains all of the essential elements of the lesser. *State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973). A defendant is entitled to have all lesser degrees of offenses which are supported by the evidence submitted to the jury as possible alternative verdicts. *State v. Drumgold*, 297 N.C. 267, 254 S.E. 2d 531 (1979); *State v. Palmer*, 293 N.C. 633, 239 S.E. 2d 406 (1977); *State v. Bell, supra.* Notwithstanding this well-established principle, the trial court need not submit lesser degrees of a crime to the jury "when the state's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the charged crime." *State v. Drumgold, supra; State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972).

Defendant was not entitled to have the alternative verdict of second-degree rape submitted to the jury for the reason that the

lesser offense was not supported by the evidence. Defendant cites our recent decision in *Drumgold* as support for his position. Defendant's reliance is misplaced. In *Drumgold,* the defendant was convicted of the crime of first-degree rape. That conviction depended, *inter alia,* on proof that the victim's resistance was overcome by the use of a deadly weapon. The defendant in *Drumgold* presented evidence through several witnesses that he did not have a gun in his possession on the day the alleged rape occurred, a contention in clear contrast to the theory of the state's case and the evidence it presented. In the case at bar, however, there is no evidence which disputes the state's contention that defendant had a gun in his possession at or near the time he allegedly raped the prosecutrix. In fact, defendant admitted that at the time he picked the prosecuting witness up on Poole Road he had a gun in his possession which was lying on the front seat of his automobile. This is consistent with the testimony of the prosecutrix that when she walked over to defendant's car, "[H]e picked up the gun and said, 'Get in.' " In this case, defendant made a general denial of the crime of first-degree rape. He admitted that he gave the prosecutrix a ride in his automobile, but that she got out of his car after "a couple of hundred yards." There was, therefore, no dispute that defendant had a gun in his possession at the time he gave a ride to Ms. Freeman. Nor was there any dispute, apparently, as to whether she had seen the gun. The absence of any dispute as to these two matters serves to distinguish the present case from that confronted by us in *Drumgold. Cf. State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977). (The state's evidence in a case of first-degree rape was sufficient to permit the inference that the victim's submission was procured through the use of a gun where it tended to show that defendant carried a gun in full view and waved it in his hands.)

[6]  By his seventh assignment of error, defendant contends that the trial court committed prejudicial error by failing to instruct the jury that in order to find defendant guilty of kidnapping they must find beyond a reasonable doubt that the victim, Ms. Freeman, was a person sixteen years of age or older. We disagree.

Kidnapping is the unlawful and nonconsensual restraint, confinement, or removal from one place to another of an individual for the purpose of committing or facilitating the commission of

certain specified acts. G.S. § 14-39(a); *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978); *see also*, Note, Kidnapping in North Carolina — A Statutory Definition for the Offense, 12 Wake Forest L. Rev. 434 (1976). On its face, this is all that the statute requires for the state to secure a conviction of kidnapping. Defendant's argument, in substance, is that the jury must find that the victim was over sixteen years of age in order to convict him of kidnapping. The implication of this allegation is that if the victim is found to be under sixteen years of age, defendant cannot be found guilty of kidnapping. But, this is clearly not what the statutory language calls for. The statute specifically says that kidnapping is the unlawful confinement, restraint, or removal of any "person sixteen years of age or over without the consent of such person, or any other person under the age of sixteen years without the consent of a parent or legal custodian of such person . . . ." G.S. § 14-39(a).

Therefore, the victim's age is not an essential element of the crime of kidnapping itself, but it is, instead, a factor which relates to the state's burden of proof in regard to consent. If the victim is shown to be under sixteen, the state has the burden of showing that he or she was unlawfully confined, restrained, or removed from one place to another without the consent of a parent or legal guardian. Otherwise, the state must prove that the action was taken without his or her own consent.

In the present case, there was no question that the victim was over sixteen years of age. Ms. Freeman testified that she was twenty-five years old and was a junior at St. Augustine's College. She was before the jury and it was competent for the jury to look upon her and draw reasonable inferences as to her age from her appearance and growth. *See State v. McNair*, 93 N.C. 628 (1885); *State v. Arnold*, 35 N.C. 184 (1851).

[7] By his ninth assignment of error, defendant contends that the trial court committed prejudicial error in denying his motion in arrest of judgment in the kidnapping case for that the bill of indictment was fatally defective in that it failed to charge that the removal of the victim was for the purpose of "facilitating the commission of any felony." The contention is without merit.

The indictment which was returned against defendant by the Wake County Grand Jury alleges in pertinent part that

. . . Curtis Edward Hunter unlawfully and wilfully did feloniously confine, restrain and remove from one place to another Millicent Lorella Freeman, a person 16 years of age or over, without her consent, said confinement, restraint or removal being for the purpose of the commission of a felony, to wit: Rape and crime against nature.

G.S. § 14-39 provides that one who unlawfully confines, restrains, or removes from one place to another, any person 16 years of age or older without their valid consent, or any person under the age of 16 years of age without the consent of their parents or legal guardians, shall be guilty of kidnapping if the confinement, restraint or removal is for one of three specific purposes: (1) holding such other person for ransom or as a hostage or using such other person as a shield; or (2) facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or (3) doing serious bodily harm or terrorizing the person so confined, restrained or removed or any other person. In substance, defendant's argument is that the indictment is fatally defective in that it does not track the precise words of the statute in charging defendant with the crime of kidnapping.

The language of the indictment put forward the state's theory of the case, i.e. that the kidnapping of Ms. Freeman was committed for the purpose of committing the felonies of rape and crime against nature. The state was, therefore, resting its case on the second of the three enumerated purposes of the statutory crime. An indictment is constitutionally sufficient if it apprises a defendant of the charge against him with sufficient certainty to enable him to prepare his defense, protect him from subsequent prosecution for the same offense, and enable the court to proceed to judgment. *State v. Pallett*, 283 N.C. 705, 198 S.E. 2d 433 (1973); *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1971). No indictment, whether at common law or under a statute, is sufficient if it does not accurately and clearly allege all of the constituent elements of the crime sought to be charged. *State v. Palmer, supra; State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970); *State v. Lackey*, 271 N.C. 171, 155 S.E. 2d 465 (1967). However, there is no requirement that an indictment must follow the precise language of the statute provided that the pleading charges facts which are sufficient to enable the indictment to fulfill its essential purposes.

Though the indictment in the present case did not track the language of the statute completely, it did charge each of the constituent elements of the crime of kidnapping in such a way that defendant was fairly apprised of the state's accusations against him. ·

Defendant contends that the trial court erred in refusing to dismiss the charges against him, in denying his motion to set the verdicts aside as being contrary to the weight of the evidence, in denying his motion for a new trial, and in denying his motion for appropriate relief. These contentions have no merit. There was more than sufficient evidence to take the case to the jury on the issue of defendant's guilt and to support the verdicts returned by the jury.

We have carefully considered all of the assignments of error presented by defendant and conclude that he received a fair trial which was free from prejudicial error.

No error.