*189
 
 Ruffin, C. J.
 

 - The Court is of opinion that neither of the objections to the evidence is valid. As to the first, it is to be observed, that the details of the conversation be; tween the deceased and Merritt, were brought out by tha prisoner — the State proving, only, that they talked about the prisoner. The most that can be said against that is, that it was irrelevant. -The Court is not obliged to waste time and protract trials, by admitting irrelevant evidence, and, to an exception for the rejection of evidence, it is a sufficient answer, that it was irrelevant. But an exception to the admission of evidence, on the ground, of irrele* vancy, is, as a general thing, refuted on its face, since what is immaterial, cannot be supposed to hurt. It is not necessary to say, that á case cannot arise, in which evidence, really irrelevant in point of law, may be calculated to mislead or prejudice the minds of the Jury ; and, in such a case, its reception would be erroneous. But, clearly, proof of the fact, simply, that those persons talked about the prisoner, could have no such effect, and, if erroneous, would be no ground for reversing the judgment. The Court, however, is of opinion, that the whole conversation was proper evidence for the State. There was such a, probability that the prisoner was in the yard, and within hearing, that the Court ought to submit it to the Jury, as being
 
 prima facie
 
 in his presence, and calculated to call forth vengeance, unless the Jury think, under the circumstances, or from other proof, that the prisoner was riot in hearing; in which case they should be told not to allow any weight to the evidence.
 

 The exclamation of the deceased, at the moment he was shot, was competent on several grounds. One is that above mentioned, that the prisoner was, probably, within hearing. Another is, that it was so immediately connected with the . principal fact of the shooting, as to be material to a proper .
 
 *190
 
 comprehension of the fact, and was a part of the
 
 res gestae.
 
 And a third is, that the wounded man seems to have been and fully convinced that he must speedily die from wound, so as to render this a most impressive dying declaration, because it was uttered before he could have made up an account, not founded on fact, but the result of ill-will or evil surmises against the prisoner.
 

 The next objection is to receiving any part of the declarations of the deceased, as his dying declarations. Sev • eral grounds were taken in the argument. It was, principally, insisted, that they do not purport to state the fact, but only the opinion of the deceased, that the prisoner shot him; and also, that it did- not" appear, from the declarations, or from 'the situation of the parties, at the time, that the deceased had the oppbrtmty of knowing the fact, so as to enable hipa to express more than an opinion on the point. But, undoubtedly, the words do import, that the deceased was professing to state the' very fact. His language is affirmative throughout. “ Elijah Arnold has killed me : He, and no other person has shot me ” And, although the exception states, that the deceased did not, in so many words, say, that he saw the prisoner shoot, yet it sets out further, that the deceased, in his various declarations, always stated the fact, that the prisoner shot him. It must, therefore, be understood,
 
 prima facie,
 
 if not conclusively, that the deceased intended to affirm as a fact, that the prisoner shot him, and, of course, that he affirmed it upon his knowledge of it. The other branch of the objection, that it did not appear that the deceased could know the fact, and, therefore, that his declarations may have been matter of inference and opinion, seems rather to go to the credit1 to be given by the Jury to the declarations, than to their competency. As they purport in themselves to declare the fact, the Court was bound to submit them to the Jury, although
 
 *191
 
 the deceased did not go into the detail of his means of knowledge. If, in passing on their weight, the samp facts
 
 \
 
 on which their competency depended with the Court, be j material to their credibility, the Jury must, of necessity, ] take them, as well as others, into their consideration for j that purpose. It might, therefore, have been a proper sub- j ject of observation to the Jury, that, although the deceas-j ed professed to state the fact, he did not expressly say, that he saw the prisoner shoot, nor how he knew the prisoner to be the person. They might have concluded, from the darkness of the night, the relatiw^jjiggifctnns of the door and fire-place, the degree tq^Pii^i^l^Jjojiag^vas open, the previous misunderstandingf^g^een the parljps, and other like things, that the deceased cud or á^0|8lá%ire the fact upon his own knowledge, Ql^&jporr suspicionjiand inference ; and. if the latter, th|y woahfo give no weight to the declarations. is no|^¡reen how the Court could reject an affirma'm=&wkey;d:e;díí?at¡on of a particular fact, upon a suspicion of some defect in the party’s means of knowledge, because he omitted to state them minutely. In this case, indeed, the circumstances, connected with the language of the deceased, are strong to show, that he had the means of knowing the fact, and that he knew what lie affirmed.
 

 The person who fired the gun, must have stood in front of the door and very near it, and the deceased was lying within five feet of the door, with his feet and face towards it, and with a bright fire light thrown on the door, so that, either by the reflection of the light, or by the flash of the gun, the deceased may, and, it would seem, must have seen the person when he fired. Hence, the instantaneous exclamation, that the prisoner had killed him — an assertion which the deceased could not have honestly made, and in his condition -would not have made, touching the matter of
 
 *192
 
 fact, if he inferred it merely as matter of conjecture. But a further and decisive answer to the objection is, that it does ndt appear to have been taken on the trial. As the exception is understood, the objection at the trial was, that the declarations were not competent on the ground, that it did not appear they were made under the apprehension of "impending death ; for immediately after stating the objection of the prisoner’s counsel, the exception proceeds to state, as the reason of the Court for overruling it, that the Court was satisfied from the evidence, that the party made them under the belief, that he was dying; from which the inference is, that the objection was founded on that reason alone. Consequently, the facts are not stated with reference to any other point, and the decision here ought not to be on any other.
 
 Woodcock’s case,
 
 1 Leach 500, is a direct authority, that the affidavit of the deceased, though not taken according to the act of 1-715, is competent and proper as being in itself a dying declaration.
 

 On the last point the Court is also of opinion, that there was no error. The objection assumed as a fact, that the prisoner appeared to be under fourteen years of age. As there was no proof on the point, it could only be judged of by inspection, and, so far as that goes, it must be taken to have been decided against the prisoner, both by the Court and theory. As the subject of direct proof, the
 
 onus
 
 was certainly on the prisoner, as the reputed age of every one is peculiarly within his own knowledge, and also the persons by whom it can be directly proved.
 

 PbR Cuiuam. There is no error in' the judgment, and the certificate will issue accordingly.