STATE OF NORTH CAROLINA v. JOSEPH H. SHAW

No. 37

(Filed 15 December 1977)

1. Criminal Law § 104— motion for nonsuit—competent and incompetent evidence considered

In a prosecution for rape and taking indecent liberties with a child, even if the trial court had erred in permitting the child to testify, defendant would not have been entitled to judgment as of nonsuit, since, upon a motion for judg-

State v. Shaw

ment of nonsuit in a criminal action, all of the evidence admitted which is favorable to the State, whether competent or incompetent, is considered.

**2. Rape § 5— nine year old victim—testimony not explicit—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for rape of a nine year old girl where the child testified that defendant penetrated her sex organ with his sex organ, and the fact that the child could not identify the place of penetration or the organ of penetration specifically by name did not render the State's evidence deficient since the child did, during her interrogation, stand before the jury and point to the portion of her anatomy penetrated and did draw on the blackboard, in the presence of the jury, the figure of a man, showing his sex organ.

**3. Criminal Law § 42.1; Rape § 4— evidence of pubic hair—evidence not supplied pursuant to pre-trial discovery order—no error**

In a prosecution for rape and taking indecent liberties with a child, defendant was not entitled to a mistrial because of the admission over objection of testimony concerning a foreign pubic hair found upon the private parts of the victim which a State's witness concluded could have originated upon the body of defendant, even though that evidence was not provided defendant pursuant to a pre-trial motion for discovery, since the district attorney did not learn of the evidence until trial was already in progress, and as soon as these matters came to the attention of the district attorney, he advised the defendant's counsel of them.

**4. Criminal Law § 51.1— qualification of experts—failure to make specific findings—no error**

Defendant's contention that the trial court erred in failing to make rulings on the qualifications of two witnesses to testify as experts is without merit, since the overruling of defendant's objections based upon the alleged lack of qualifications necessarily implied a finding by the court that the witnesses were qualified.

**5. Criminal Law §§ 72, 169.3; Rape § 4— defendant's age—evidence not prejudicial**

In a prosecution for rape and taking indecent liberties with a child, any error of the trial court in admitting testimony by a detective concerning defendant's age without a prior showing that defendant was given *Miranda* warnings before making an in-custody admission as to age was waived where defendant himself, testifying as a witness in his own behalf, revealed his age; furthermore, it is proper for a jury, upon looking at the defendant in court, to draw reasonable inferences as to his age.

**6. Criminal Law § 162— evidence objected to—failure to include evidence in record—no prejudice shown**

Where the record does not show what defendant's answers would have been to questions concerning prior convictions asked him by his own counsel, the court on appeal cannot determine whether defendant was prejudiced by the court's ruling sustaining the State's objections to the questions.

**7. Criminal Law § 114.3— presumption of innocence—jury instructions—no expression of opinion**

Statement by the trial judge in his charge to the jury that, "At this moment the defendant is legally innocent of the charges against him simply because the law says so," did not amount to an expression of opinion or suggest to the jury that the presumption of innocence was simply a legal technicality, since, throughout the charge, the court clearly and correctly instructed the jury that the State must prove beyond a reasonable doubt, which term he correctly defined, each element of the offense charged before the jury could return a verdict of guilty.

**8. Criminal Law § 112.2— reasonable doubt—jury instructions proper**

The trial judge did not err when he told the jury, in instructing on reasonable doubt, that it must find defendant not guilty if, upon a full, fair consideration of the evidence, the jury had "any doubt based upon common sense and reason and arising out of the evidence or lack of it, not with regard to anything that any witness told you during testimony," since that instruction must have been understood by the jury to mean that it might have some reasonable doubt as to something that a particular witness testified and still, upon consideration of all the evidence, have no reasonable doubt as to defendant's guilt.

**9. Rape § 6— jury instructions—consideration of lesser offenses**

In a prosecution for rape and taking indecent liberties with a child, the trial court did not err in instructing the jury that it should first determine whether the defendant was or was not guilty of rape in the first degree and consider his guilt of rape in the second degree only if it found him not guilty of rape in the first degree, and should consider his guilt of the lesser offense of assault with intent to commit rape only if it found he was not guilty of rape in the second degree.

**10. Indictment and Warrant § 7.1; Criminal Law § 127.2— motion in arrest of judgment—date indictment returned not essential—motion properly denied**

The trial court properly denied defendant's motion in arrest of judgment made on the ground that the indictment was deficient in that the date on which the grand jury returned the indictment did not appear upon the face of the bill, since the indictment did show that it was returned on the "9th day of August 19--" and the fact that trial was had in January of 1977 necessarily showed that the indictment was returned on 9 August 1976, but, in any event, such date was not an essential part of the bill of indictment, and the stated reason for the motion in arrest of judgment was not sound.

**11. Constitutional Law § 34; Criminal Law § 26.5— rape—taking indecent liberties with child—same child—same occasion—imprisonment for both offenses—double jeopardy**

In a prosecution for rape and taking indecent liberties with a child, judgment upon the charge of taking indecent liberties with a child should be arrested for the reason that defendant was convicted and sentenced for the offense of rape upon the same child in the same course of action, and to imprison defendant for consecutive terms upon both offenses would be to punish him twice for the same offense.

APPEAL by defendant from *Godwin, J.,* at the 17 January 1977 Criminal Session of CUMBERLAND.

By separate indictments, each proper in form, the defendant was charged with first degree rape of Sabrina Elliott, a virtuous female child under the age of 12 years, the defendant at the time being more than 16 years of age, and with taking indecent liberties with the said child, the two offenses being alleged to have been committed on the same day, 10 July 1976.

It is undisputed that at the time of the alleged offenses Sabrina Elliott was nine years of age and the defendant 31.

The witnesses for the State included Sabrina, five of her young playmates, ranging in age from 11 to 13, her mother, the grandmother of one of the playmates, the doctor who examined the child after the alleged offenses, his nurse assistant, the investigating police detective, two other police technicians, who testified as to the physical transmission of certain exhibits, and Mr. Glen Glesne, laboratory analyst with the State Bureau of Investigation.

The defendant testified in his own behalf, calling no other witnesses. The substantial difference between his testimony and that of Sabrina is that the defendant denied penetration of Sabrina with his male sex organ, asserting that he penetrated her female sex organ with his finger only. Sabrina, on the other hand, testified that he penetrated her with both his finger and his male sex organ, the defendant contending that her testimony was vague and indefinite as to the instrument of penetration.

The following facts are not in controversy:

About dark on 10 July 1976, Sabrina was at the home of her playmate, Phyllis Berry, aged 11. The defendant and a male companion, apparently somewhat over 16 years of age, were also at the Berry house. Some 500 yards from the house, boys of the neighborhood had built and, to some extent, furnished a tin shack which the children referred to as a camp or clubhouse. The defendant, his companion and the two little girls went to the shack, apparently at the suggestion of Phyllis, who appears to have been substantially more sophisticated than Sabrina with reference to sexual matters. At the camp they found three small boy playmates of the girls. As they all sat in the shack, the conversa-

tion went to sexual matters and to the development of the bodies of the little girls. The defendant felt of Sabrina's body about her private parts and requested Sabrina to permit him to engage in certain intimacies with her, which request she refused but, finally, at the urging of Phyllis, Sabrina agreed to permit the proposed activity outside the shack if Phyllis would go with her. The three then went outside the shack and, at the insistence of the defendant and Phyllis, Sabrina pulled down her shorts and lay down. The defendant lay down upon her, unzipped his trousers and rubbed his male sex organ upon her. He penetrated the child's female sex organ with his finger. Sabrina began screaming and the two men and Phyllis ran away.

In addition to the above uncontroverted facts, to which both the defendant and Sabrina testified, Sabrina testified that the defendant did penetrate her with his male sex organ and thereafter penetrated her with his finger. On cross-examination, she reversed the order of these penetrations. After the departure of the defendant, Sabrina ran home and her mother took her to the hospital where she was examined in the emergency room. There she told the doctor and the nurse what had happened.

The testimony of the examining doctor and his nurse was to the following effect:

When Sabrina arrived at the hospital she told the doctor that the man had actually penetrated her with his male sex organ. Her underclothing was bloody and she was still bleeding from her female sex organ. She had sustained an internal laceration which, in the opinion of the doctor, could have been caused either by penetration by a male sex organ or penetration by a finger with a long fingernail. From the exterior of the child's female sex organ, the doctor removed a hair. The child, herself, did not have any pubic hair.

Mr. Glen Glesne, laboratory analyst for the State Bureau of Investigation, testified that he compared the hair so removed by the doctor from Sabrina with pubic hairs taken from the defendant by investigation police officers and, in his opinion, the hair so removed from Sabrina "could have come from the same origin, the same source" as the hair so taken from the defendant.

*Rufus L. Edmisten, Attorney General, by Nonnie F. Midgette, Associate Attorney, for the State.*

*Mary Ann Tally, Public Defender, for Defendant.*

LAKE, Justice.

G.S. 14-202.1 provides:

"*Taking indecent liberties with children.* — (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

(b) Taking indecent liberties with children is a felony, punishable by a fine, imprisonment for not more than 10 years, or both."

The defendant assigns as error the denial of his motions for judgment of nonsuit as to both cases. In his brief he confines his argument upon this assignment of error to the charge of rape. He has thus abandoned this assignment of error with reference to the charge of taking indecent liberties with a child. Rule 28(a), Rules of Appellate Procedure, 287 N.C. 671, 741. His decision in this respect was well founded for his own testimony is ample to sustain the verdict of guilty as to this charge. As to the charge of rape, this assignment of error is also without merit.

[1]  In his brief the defendant says that this assignment is "inextricably intertwined with the question of the determination of the competency of the child witness to testify, "which is the subject of his first assignment of error. While, as we shall subsequently show, there was no error in permitting the child to testify as a witness, if there had been such error, it would not entitle the defendant to a judgment of nonsuit. It is well settled that, upon a

motion for judgment of nonsuit in a criminal action, all of the evidence admitted, which is favorable to the State, whether competent or incompetent, is considered. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Virgil*, 263 N.C. 73, 138 S.E. 2d 777 (1964); Strong, N.C. Index 3d, Criminal Law, § 104.

It is elementary that, for the purpose of ruling upon such a motion, only the evidence introduced by the State is considered, except insofar as the evidence for the defendant clarifies and strengthens it, and any discrepancies in the State's evidence are disregarded, its evidence, favorable to it, being deemed true and being interpreted in the light most favorable to the State. Strong, N.C. Index 3d, Criminal Law, § 104. If, upon such consideration, there is substantial evidence, whether direct, circumstantial, or both, to support a finding that the offense charged has been committed and that the defendant committed it, the motion for judgment of nonsuit is properly denied. *State v. McKinney*, 288 N.C. 113, 117, 215 S.E. 2d 578 (1975); Strong, N.C. Index 3d, Criminal Law, § 106.2. The evidence in the present case as to the charge of rape fully met this test.

[2] In his brief the defendant contends that the State's evidence was deficient in that Sabrina did not know the meaning of certain terms and, consequently, her testimony was vague as to the element of penetration. However, the law does not disqualify a little girl, alleged to have been the victim of a sexual assault, to testify as a witness concerning the acts of the defendant, or belittle the significance of her testimony, merely because she does not identify with scientific accuracy the portions of her anatomy and that of the defendant involved in the assault, or because she has not been sufficiently liberated to use with fluency the vernacular of the prostitute and her customers in an attempt to do so. This nine year old child, during her interrogation, stood before the jury and pointed to the portion of her anatomy penetrated and drew upon the blackboard, in the presence of the jury, the figure of a man, showing his sex organ. Unquestionably, the jury could understand her testimony as to where she was penetrated and as to the instrument of penetration.

It is well settled in this State that the competency of a child to testify rests "mainly, if not entirely, in the sound discretion of the trial judge in the light of his examination and observation of the particular witness." *State v. Wetmore*, 287 N.C. 344, 215 S.E.

2d 51 (1975), *reversed as to death sentence only*, 428 U.S. 905, 96
S.Ct. 3213, 49 L.Ed. 2d 1212; *State v. Cook*, 280 N.C. 642, 187 S.E.
2d 104 (1972); *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406 (1966);
*Artesani v. Gritton*, 252 N.C. 463, 113 S.E. 2d 895 (1960). Here, as
we said in *State v. Turner, supra*:

> "There was no error in holding that the little girl who
> was the alleged victim of these offenses was a competent
> witness. [Citations omitted.] There is no age below which one
> is incompetent, as a matter of law, to testify. The test of com-
> petency is the capacity of the proposed witness to under-
> stand and to relate under the obligation of an oath facts
> which will assist the jury in determining the truth of the
> matters as to which it is called upon to decide. This is a mat-
> ter which rests in the sound discretion of the trial judge in
> the light of his examination and observation of the particular
> witness. In the present case, the child was examined with
> reference to her intelligence, understanding and religious
> beliefs concerning the telling of a falsehood, all of which took
> place out of the presence of the jury. The record indicates
> she was alert, intelligent and fully aware of the necessity for
> telling the truth."

There is nothing in the present record to indicate an abuse of
discretion by the trial judge in permitting Sabrina and her
playmates to testify. Her childish terminology simply raised a
question for the jury as to her meaning and credibility.

[3] The defendant's Assignments of Error 5, 6 and 7 relate to
the admission, over objection, of testimony concerning the finding
of a foreign pubic hair upon the private parts of Sabrina, its
similarity to hair taken from the defendant by the investigating
police detective, and the court's denial of the defendant's motion
for mistrial because of the admission of this testimony. In these
assignments we find no merit. The defendant's argument with
reference to these assignments is that he was taken by surprise
and that G.S. 15A-910, dealing with discovery in criminal pro-
ceedings, should be construed to bar the admission of this
evidence.

The record shows that the defendant made a pre-trial written
request for discovery and a pre-trial motion for discovery as to
any physical evidence that the State intended to introduce at the

trial. It further shows that, prior to trial, the District Attorney, in good faith, advised defendant's counsel of all exhibits then known to the District Attorney, together with the original report made by Mr. Glesne, the laboratory expert of the State Bureau of Investigation. The record further shows that the District Attorney had no opportunity to interview Dr. Johnson, the examining physician, who testified as a witness for the State, prior to a recess during trial, at which time the District Attorney first learned of the finding of the hair. The record likewise shows that Mr. Glesne, at the time of his original report to the District Attorney, did not know where this hair was found or its significance in relation to the hairs taken from the body of the defendant and so that report did not deal with a comparison of these hairs. While the trial was in progress, and after Dr. Johnson had disclosed to the District Attorney his finding of the hair upon Sabrina, Mr. Glesne made a further study of the hairs and reached his conclusion that the one found upon the body of Sabrina could have originated upon the body of the defendant. As soon as these matters came to the attention of the District Attorney, he advised the defendant's counsel of them. The trial judge ruled that there had been no bad faith on the part of the District Attorney in failing earlier to so advise defendant's counsel of these facts, overruled the objection of the defendant to the introduction of this evidence and denied his motion for mistrial. In these rulings we find no error.

G.S. 15A-910, which is part of the Article relating to discovery in criminal procedures, provides:

"*Regulation of discovery—failure to comply.* — (a) If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers *may*

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(4) Enter other appropriate orders." (Emphasis added.)

By its express terms, this statute authorizes, but does not require, the trial court to prohibit the party offering nondisclosed evidence from introducing it. This is left to the discretion of the trial court and, under the circumstances disclosed by this record, we perceive no indication of abuse of such discretion. The defendant did not, as he might have done, request a continuance in order to permit him to prepare for cross-examination of these witnesses with reference to this matter.

[4] Defendant's Assignment of Error 4 is to the effect that the trial court erred in failing to make rulings on the qualifications of Dr. Johnson and Mr. Glesne to testify as experts. The record, however, does not support the defendant's contention. When the defendant objected to Dr. Johnson's testimony as to his findings upon his medical examination of Sabrina, the court stated: "The court will rule upon the objections going to the qualifications of the witness to state a medical opinion. The objection is overruled." As to Mr. Glesne, the defendant objected to his testimony concerning the result of his examination of the several hairs above mentioned for the reason that "the witness has not been properly qualified." The court replied, "That objection is also overruled." Thus, the court did rule upon the qualifications of each of these witnesses to testify as an expert in the field in which he was being interrogated by the District Attorney.

The overruling of the defendant's objection based upon the alleged lack of qualifications necessarily implied a finding by the court that the witness was qualified. The evidence fully sustains such findings as to each of these witnesses. As we said in *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969), "Though it would have been better practice for the [District Attorney] to have tendered him formally as an expert, and for the court so to rule expressly, under the circumstances disclosed in this record there was no error in permitting the witness to state his opinion in response to a question otherwise competent." In *Dickens v. Everhart*, 284 N.C. 95, 199 S.E. 2d 440 (1973), the action was one for damages for alleged medical malpractice. The plaintiff called as his witness a physician who testified as to his medical training and practice. The plaintiff did not formally tender this witness as an expert. The defendant objected to certain hypothetical questions, proper in form, which objections were sustained by the trial judge. The Court of Appeals held it was unnecessary to pass upon the validi-

ty of the reason given by the trial judge for this ruling since the defendant did not admit the witness was a medical expert and the plaintiff had not requested the court to find him to be one. This Court reversed, saying:

> "Nothing else appearing, when a question calling for the opinion of a witness, not previously offered as an expert, is propounded and an objection is made, if there is no finding by the court, or admission by the adverse party, that the witness is qualified to testify as an expert, the sustaining of the objection will not be held error by the appellate court. [Citations omitted.] It is always a better practice for the party offering an expert witness to tender him as such formally and to request the court to find him to be such. [Citation omitted.] However, to apply the above stated general rule under the facts of this case is to look solely to form and to disregard substance. The intent to offer the witness as an expert being clear, his qualifications being shown and the adverse ruling of the court thereon being expressly stated, together with the reason therefor, the record presents for appellate review the validity of the court's ruling."

The record in the present case shows clearly that the trial court overruled the objection of the defendant to the testimony, which objection was based upon failure to qualify the witness as an expert. To grant a new trial on the basis of this assignment of error would paramount form over substance. The assignment is overruled.

[5] Detective Watson of the Fayetteville Police Department, a witness for the State, testified that after interviewing Sabrina at the hospital, he placed the defendant under arrest and took him to the Law Enforcement Center. He then testified that he asked the defendant for his date of birth and, over objection, was permitted to testify that the defendant stated he was born in the year 1945. The defendant now contends that this evidence was incompetent for the reason that the defendant's age is an essential element of the crime of rape in the first degree, which it is, G.S. 14-21(a), and there was no showing that, prior to this in-custody admission, he was given the warnings of his constitutional rights required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

It is a sufficient answer to this assignment of error that the defendant, himself, testifying as a witness in his own behalf, began his direct testimony with this statement: "My name is Joseph Howard Shaw, and I live at 138 Grove View Terrace. I have lived in Cumberland County approximately thirty-two years." This testimony, voluntarily given by the defendant, himself, waived any error of the trial court in the admission of the testimony of Detective Watson concerning the defendant's age. Stansbury, North Carolina Evidence, Brandis Rev., § 30.

Furthermore, it has long been the rule in this Court that it is proper for a jury, upon looking at the defendant in court, to draw reasonable inferences as to his age. *State v. McNair*, 93 N.C. 628 (1885); *State v. Arnold*, 35 N.C. 184 (1851); Stansbury, North Carolina Evidence, Brandis Rev., § 119.

In *State v. Arnold, supra*, a "small boy," whose age was not stated in the record, was convicted of murder. His counsel contended that he was apparently under the age of 14 years and, therefore, it was incumbent upon the State to prove that he was over that age or had such knowledge of right and wrong as would render him responsible for the homicide. The trial court held the burden of proof was upon the prisoner to show his age. This Court, speaking through Chief Justice Ruffin, said, "As there was no proof on the point, it could only be judged of by inspection, and so far as that goes it must be taken to have been decided against the prisoner both by the court and the jury."

In *State v. McNair, supra*, the defendant was found guilty of rape of a child under 10 years of age. The defendant contended he was under 14 years of age at the time of the alleged offense and testimony was offered upon that question, which evidence was conflicting. The trial court instructed the jury, "It is for you to say whether he is under 14 years of age or not, being, as you see him before you, grown to the stature of manhood." In finding no error, this Court, speaking through Chief Justice Smith, said: "But if the patent fact of the prisoner's full growth was before the jury and beyond dispute, how could there be error in telling the jury what they saw themselves. * * * Again, it was competent for the jury to look at the prisoner and draw such reasonable inferences as to his youth as his appearance warranted."

In the present case, the defendant's exact age is not the question. The question is whether he was, at the time of the of-

fense, which was less than a year before his trial, more than 16 years of age. If, as he, himself, testified, he had lived in Cumberland County approximately 32 years, we may reasonably assume that his appearance in the courtroom would make it clear to the jury that he was more than 16 years of age at the time of the offense. Upon the defendant's objection to testimony by Detective Watson concerning statements made by the defendant to him as to the defendant's age, it would have been better practice for the court to have excused the jury and conducted a voir dire to determine whether the *Miranda* warnings were given. However, any error committed in this respect was clearly harmless.

[6] On his own direct examination, the defendant was asked by his counsel whether he had been previously convicted of any criminal offenses, and, if so, what. The State's objections to these questions were sustained. On cross-examination the defendant testified that he had been convicted of crimes on 13 previous occasions, including assault on a 40 year old female, breaking and entering, larceny, public drunkenness, affray, carrying a concealed weapon and improper registration. On redirect examination, his counsel asked him to explain the circumstances of his previous conviction of assault on a female. The State's objection to this question was sustained. These rulings of the court are the subjects of the defendant's Assignments of Error 10 and 11.

It is a sufficient answer to these assignments that the record does not show what the defendant's answers to any of these questions put by his own counsel to him on direct and redirect examination would have been. We, therefore, cannot determine from the record wherein, if at all, the defendant was prejudiced by the rulings of which he here complains. "When evidence is excluded, the record must sufficiently show what purport of the evidence would have been, or the propriety of the exclusion will not be reviewed on appeal. * * * When an objection to a specific question is sustained, this ordinarily means that the answer the witness would have given should have been made a part of the record." Stansbury, North Carolina Evidence, Brandis Rev., § 26. *Accord: State v. Little*, 286 N.C. 185, 209 S.E. 2d 749 (1974), *rehear. den.*, 286 N.C. 548 (1975); *State v. Robinson*, 280 N.C. 718, 187 S.E. 2d 20 (1972); *State v. Utley*, 223 N.C. 39, 25 S.E. 2d 195 (1943).

As to the questions asked the defendant on direct examination, it would appear that his prior criminal convictions were fully brought forth by the State on cross-examination. If so, the information sought to be elicited by the rejected question on direct examination was fully obtained and no prejudice to the defendant resulted from the sustaining of the State's objections. The defendant says that he was prejudiced in that the ruling of the court precluded him from "drawing the sting" of expected cross-examination by the District Attorney with reference to defendant's prior criminal record. It would seem, however, that the hoped for psychological advantage, if any, was fully obtained by the mere fact that his counsel asked the questions in the presence of the jury. We find no merit in these assignments of error.

[7]   In the introductory portion of his charge to the jury, the trial judge said:

> "When any person charged with crime upon arraignment enters a plea of not guilty the law immediately steps forward and creates for him, for his benefit, in his behalf a legal presumption that the party charged is legally innocent of the charges against him, and the defendant stands in that situation at this moment. At this moment the defendant is legally innocent of the charges against him *simply because the law says so*." (Emphasis added.)

The defendant now contends that the portion of this instruction which we have emphasized is an intimation of opinion by the trial judge in violation of G.S. 1-180 and conveyed to the jury "the idea that the presumption of innocence is simply a legal technicality at this point in the trial." There is no merit in this contention. Throughout the charge the court clearly and correctly instructed the jury that the State must prove beyond a reasonable doubt, which term he correctly defined, each element of the offense charged before the jury could return a verdict of guilty. The defendant's Assignment of Error 12 is, therefore, overruled.

[8]   The defendant's Assignment of Error 13 is that the judge erred in instructing the jury as to the meaning of the term "reasonable doubt." The portion of the judge's charge to which this assignment related was:

"So, when you come to consider the evidence in this case I instruct you that if upon a full, fair consideration of the evidence you find that you are fully satisfied of the Defendant's guilt in that case that you are then considering you have no reasonable doubt. If you find that you are fully convinced of his guilt you have no reasonable doubt. If you find you are satisfied of his guilt to a moral certainty you have no reasonable doubt, but if upon such consideration you find that you have any doubt based upon common sense and reason and arising out of the evidence presented or lack of it, *not with regard to anything that any witness told you during testimony* but if you find that you have any doubt based upon common sense and reason and arising out of the evidence or lack of it with regard to any fact which is essential to constitute guilt then you do have a reasonable doubt and if you do find that you have a reasonable doubt I instruct you that under those circumstances the law commands of you that you return a verdict of not guilty because by making such finding you will have found that the State has failed to carry the burden of proof imposed upon it by law." (Emphasis added.)

The defendant contends that the portion of the above instruction which we have emphasized "clearly conveyed to the jury the opinion of the court that they could not have any reasonable doubt as to the testimony of any witness in the case." This contention obviously lacks merit. The charge must be read contextually. The jury was clearly instructed that it must find the defendant not guilty as to each of the offenses with which he was charged, if, upon a full, fair consideration of the evidence, as to such offense, it had "any doubt based upon common sense and reason and arising out of the evidence or lack of it" with regard to any fact essential to constitute guilt. We think it evident that the phrase in this instruction which we have emphasized, and to which the defendant's objection is addressed, must have been understood by the jury to mean that it might have some reasonable doubt as to something that a particular witness testified and still, upon consideration of all the evidence, have no reasonable doubt as to the defendant's guilt. In this there was no error.

[9]   The court instructed the jury as to the lesser offenses of rape in the second degree and assault with intent to commit rape. The defendant does not assign any error with reference to the instructions pertaining to the elements of these offenses. He contends, however, that the trial court erred in instructing the jury that it should first determine whether the defendant is or is not guilty of rape in the first degree and consider his guilt of rape in the second degree only if it found him not guilty of rape in the first degree, and should consider his guilt of the lesser offense of assault with intent to commit rape only if it found he was not guilty of rape in the second degree. The defendant contends that proper instruction was to tell the jury that they might consider, in order, each of the lesser offenses if they had some reasonable doubt as to the guilt of the greater offense.

As to this assignment we find no merit. The court had clearly instructed the jury that it was to find the defendant not guilty of each such offense if the jury had reasonable doubt as to the proof of any essential element of such offense. Construing the charge in its entirety, we find no reasonable basis for belief that the jury was confused by this portion of the court's instructions. We find no conflict between the several portions of the judge's charge to the jury in this respect. This assignment of error is, therefore, overruled.

We also find no merit in Assignments of Error 2 and 3. No useful purpose would be served by a detailed discussion of them.

[10]   Finally, in Assignment of Error 15, the defendant contends that the court erred in denying his motion in arrest of judgment. This motion was directed to both charges against the defendant. In his brief the appellant limits his argument on this assignment to the charge of taking indecent liberties with a child, thus abandoning this assignment insofar as it relates to the charge of rape. Rule 28 of the Rules of Appellate Procedure, supra. We find in the record no basis whatever for such a motion with reference to the charge of rape. As to the charge of taking indecent liberties with a child, the defendant asserts in his brief that the indictment for this offense is deficient in that the date on which the grand jury returned the indictment does not appear upon the face of the bill.

The bill of indictment in this case charges the offense was committed on 10 July 1976 and the return by the grand jury is

dated "9th day of August, 19--." Since the trial was had in January 1977, of necessity, the indictment then showed on its face that it was returned for the grand jury on 9 August 1976. In any event such date is not an essential part of the bill of indictment. Consequently, the stated reason for the motion in arrest of judgment is not sound. *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537 (1976). In Strong, North Carolina Index 3d, Indictment and Warrant, § 7.1, it is said: "Quashal of indictments and warrants is not favored, and an indictment or warrant will not be quashed for technical objections that do not affect the merits, nor for mere informality or refinement." The indictment for taking indecent liberties with a child charges all of the essential elements of the offense with sufficient certainty to apprise the defendant of the specific accusation against him, to protect him from a subsequent prosecution for the same offense and to enable the court to proceed to judgment. It was, therefore, sufficient and the motion in arrest of judgment could not be sustained because of any defect in the indictment. *State v. Pallet*, 283 N.C. 705, 198 S.E. 2d 433 (1973); Strong, North Carolina Index 3d, Indictment and Warrant, §§ 9 and 9.1.

[11] Nevertheless, we conclude that judgment upon the charge of taking indecent liberties with a child should be arrested for the reason that the defendant has been convicted and sentenced for the offense of rape upon the same child in the same course of action. The crime of rape of "a virtuous female child under the age of 12 years," the offense of which the defendant has here been convicted, cannot be committed except by taking "immoral, improper, and indecent liberties with a female child under the age of 16," the offense for which the defendant has also been here convicted. Thus, the lesser offense with which the defendant has been charged and convicted is necessarily included in the offense of rape. To imprison him for consecutive terms upon both offenses would, therefore, be to punish him twice for the same offense. The judgment of the court sentencing the defendant to imprisonment for 10 years upon the charge of taking indecent liberties with a child must, therefore, be arrested. The judgment sentencing him to imprisonment for life for rape in the first degree is free from error. The direct conflict between the testimony of Sabrina and that of the defendant as to this charge simply raised a question of fact for the jury which believed her, not him.

Judgment for rape: No error.

Judgment for taking indecent liberties with a child: Arrested.